IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Leroy Collins,                  :

    Plaintiff,              :

  v.                            :    Case No. 2:05-cv-0367

Reginald Wilkerson, et al.,     :    JUDGE HOLSCHUH

    Defendants.             :

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Leroy Collins, an inmate at the Chillicothe Correctional Institution, filed this action under 42 U.S.C. §1983 alleging that certain conditions at CCI violated his constitutional right to be free from cruel and unusual punishment.  Count one of the complaint states that Mr. Collins has not received adequate and proper medical care for Hepatitis C, a disease for which he tested positive while incarcerated at CCI.  Count two avers that Mr. Collins, despite being under treatment and medication for severe asthma, was denied housing in a strictly non-smoking unit.  The defendants against whom Mr. Collins asserts these claims are Reginald Wilkinson, the former director of the Ohio Department of Rehabilitation and Corrections, Timothy Brunsman, the warden of CCI, and Dr. James McWeeney, a member of the medical staff at CCI.  Both Mr. Collins and the defendants have moved for summary judgment.  For the following reasons, it will be recommended that Mr. Collins' motion be denied and that the defendants' motion be granted.

I.

Fed. R. Civ. P. 56(c) provides:

> The judgment sought shall be rendered
> forthwith if the pleadings, depositions,

> answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

"[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original); Kendall v. The Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 248. The purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). Therefore, summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is,...[and where] no genuine issue remains for trial,...[for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464, 467 (1962); accord, County of Oakland v. City of Berkley, 742 F.2d 289, 297 (6th Cir. 1984).

In making this inquiry, the standard to be applied by the Court mirrors the standard for a directed verdict. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Anderson, 477 U.S. at 250.

> The primary difference between the two motions is procedural: summary judgment motions are usually made before trial and decided on documentary evidence, while

2

> directed verdict motions are made at trial and decided on the evidence that has been admitted. <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 745, n. 11 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Accordingly, although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed "to secure the just, speedy and inexpensive determination of every action." <u>Celotex</u>, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

In a motion for summary judgment the moving party bears the "burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the [evidence submitted] must be viewed in the light most favorable to the opposing party." <u>Adickes v. S. H. Kress & Co.,</u> 398 U.S. 144, 157 (1970) (footnote omitted); <u>accord</u>, <u>Adams v. Union Carbide Corp.</u>, 737 F.2d 1453, 1455-56 (6th Cir. 1984), <u>cert</u>. <u>denied</u>, 469 U.S. 1062 (1985). Inferences to be drawn from the underlying facts contained in such materials must be considered in the light most favorable to the party opposing the motion. <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962); <u>Watkins v. Northwestern Ohio Tractor Pullers Association, Inc.</u>, 630 F.2d 1155, 1158 (6th Cir. 1980). Additionally, "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. <u>Adickes</u>, 398 U.S. at 157-60; <u>Smith v. Hudson</u>, 600 F.2d 60, 65 (6th Cir.), <u>cert.</u> <u>dismissed</u>, 444 U.S. 986 (1979).

If the moving party meets its burden and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to

3

establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  Anderson, 477 U.S. at 251.  As is provided in Fed. R. Civ. P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon  the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule,  must set forth specific facts showing that there is a genuine issue for trial.  If he does not so respond, summary judgment,  if appropriate, shall be entered against him.

Thus, "a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him."  First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 259 (1968) (footnote omitted).

II.

Rhonda Gray is the Health Care Administrator at CCI.  (Gray Affidavit at ¶2).  Her duties include the review of inmate medical records to ensure compliance with ODRC policy regarding medical protocols and that appropriate medical care is provided to inmates at CCI in consultation with the institution physician.  (Id. at ¶3).  Ms. Gray is familiar with the medical protocols issued by the ODRC Medical Director and is responsible for seeing that they are carried out within the appropriate medical guidelines.  (Id. at ¶4).  Among these medical protocols is a policy for the "Testing and Treatment Guidelines for Chronic Hepatitis C" which is referred to as Protocol Number C-5. (Id. at ¶5).  Protocol Number C-5 was first issued on November 18, 2001,

and was revised effective March 27, 2007.  (Id.).

Ms. Gray reviewed Mr. Collins' medical records after he complained of not receiving appropriate medical care for treatment of Hepatitis C. (Id. at ¶6).  Ms. Gray is the custodian of medical records for inmates, including Mr. Collins, who are incarcerated at CCI.  (Id. at ¶3).  These medical records are kept in the ordinary course of business at CCI and were prepared at or near the time of occurrence from information transmitted by persons with knowledge of such matters.  (Id. at ¶7).  Attached to Ms. Gray's affidavit are copies of Mr. Collins' medical records which she certifies are authentic.  (Id.).

Mr. Collins' records show that on December 31, 2003, he completed a "Screening Questionnaire for Possible Hepatitis C Exposure" at the ODRC reception center.  (Id. at ¶7a).  His completion of this questionnaire resulted in his testing for the Hepatitis C virus.  (Id.).  On January 13, 2004, Mr. Collins tested positive for Hepatitis C and two days later was added to the chronic care clinic for liver/hepatitis C.  (Id. at ¶7d).  Mr. Collins also received additional blood testing, and his "Hepatitis C Evaluation and Treatment Worksheet" dated April 21, 2004, documents his serum ALT level. (Id.).

On July 15, 2004, Mr. Collins appeared for his first chronic care clinic appointment.  The records for this initial visit include "Chronic Liver Disease Baseline Data," "Hepatitis C Nursing Care Plan," "HCV Treatment Criteria Worksheet" that was signed by Mr. Collins and listed the criteria for exclusion and inclusion treatment, an "Informed Consent and Treatment Contract" signed by Mr. Collins, a patient teaching confirmation signed by Mr. Collins, and the nurse's "Interdisciplinary Progress Notes" for that date in which she indicated that Mr. Collins was provided with liver chronic care patient information and education regarding Hepatitis C.  (Id. at ¶7e).  Mr. Collins was

subsequently seen in the chronic care clinic on October 25, 2004, October 27, 2004, March 11, 2005, August 1, 2005, November 29, 2005, February 21, 2006, May 23, 2006, August 28, 2006, September 25, 2006, December 6, 2006, January 25, 2007, February 4, 2007, and September 18, 2007.  (Id. at ¶7f).

On May 9, 2006, Mr. Collins underwent a liver ultrasound, the results of which were normal.  (Id.).  A request for a liver biopsy for Mr. Collins was submitted on September 21, 2007 to ODRC's medical provider.  This request initially was denied due to the need for additional information and further medical testing.  Once the additional information is forwarded to the medical provider, Ms. Gray expects that the biopsy results will be approved.  For safety and security reasons, Mr. Collins will not be notified of the date and time of his biopsy until just prior to the procedure.  (Id. at ¶7g).  The results of the liver biopsy could change the course of Mr. Collins' treatment.  (Id. at ¶7h).

Mr. Collins acknowledges undergoing blood testing every few months to monitor his ALT levels.  During 2007, these levels have increased significantly.  See Exhibit B to Plaintiff's Memorandum Contra Defendants' Motion for Summary Judgment.  Mr. Collins believes these numbers evidence an intensification of his infection and a deterioration in the condition of his liver.  This belief is the basis for his requesting a biopsy which could confirm the presence of liver fibrosis.  Mr. Collins also asserts that had he been administered interferon and ribavirin when first diagnosed with Hepatitis C, his enzyme levels would not have risen to their current dangerous elevation.  The only reason given to him for the defendants' denial of what he regards as proper medicine and treatment is Protocol Number C-5.  See Plaintiff's Motion for Summary Judgment p. 2 and his Affidavit of Verity at ¶2.  The stress, frustration, and feelings of

6

hopelessness Mr. Collins has experienced as the result of his perceived lack of medical treatment have allegedly caused him to develop an anxiety disorder and led to his placement on a mental health caseload at CCI.  See Plaintiff's Memorandum Contra, pp. 3-4.

In order for a prisoner to bring a successful Eighth Amendment claim, a prisoner must prove "deliberate indifference," which constitutes "the unnecessary and wanton infliction of pain."  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  The Sixth Circuit Court of Appeals stated:

> The Supreme Court recently clarified the definition of deliberate indifference in the Eighth Amendment context by equating it with criminal recklessness, which requires a subjective showing that the defendant was aware of the risk of harm.  Deliberate indifference, the Court held, requires that the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.  The *Farmer* Court added that prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.

Sanderfer v. Nichols, 62 F.3d 151, 155-54 (6th Cir. 1995) (internal citations and quotations omitted).  Put simply, a viable Eighth Amendment claim includes both a subjective and objective component: (1) objectively, the deprivation alleged must be "sufficiently serious," and (2) subjectively, the defendant prison officials must have a "sufficiently culpable state of mind."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Mr. Collins has adequately shown that he suffers from an objectively serious medical condition.  See Johnson v. Million,

7

60 Fed. Appx. 548, 549 (6th Cir. 2003); Hix v. Tennessee Dept. of Corrections, 196 Fed. Appx. 350, 356 (6th Cir. 2006). Mr. Collins has not, however, put forth any evidence that calls into question either the medical efficacy of Protocol Number C-5 or the fact that his treatment has been consistent with the policies and standards therein. In many cases, Hepatitis C will never progress to the degree where antiviral therapy will be needed. See Hix, 196 Fed. Appx. at 357 n.1. Had Mr. Collins' ALT levels remained within the normal range, continued monitoring every few months along with blood testing would have been sufficient. See Johnson, 60 Fed. Appx. at 549. Mr. Collins concedes that such monitoring and testing have occurred, and that his enzyme levels were relatively unchanged from 2004 to 2006. Plaintiff's Memorandum Contra p. 3. Once these levels began to rise, Mr. Collins was referred for a liver ultrasound, the results of which came back normal. As his ALT readings reached more dangerous levels in 2007, he was recommended for a liver biopsy. Mr. Collins will not meet the criteria for antiviral treatment unless the biopsy results indicate the presence of liver fibrosis. See Protocol Number C-5 (IV)(F)(2)(e) p. 5.

Given this record, no reasonable trier of fact could conclude that the defendants had a "sufficiently culpable state of mind" to constitute deliberate indifference to Mr. Collins' medical needs. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). The fact that Mr. Collins disagrees with the criteria set forth in Protocol Number C-5 and would have preferred to have been treated with antiviral therapy form the onset of his diagnosis does not constitute cruel and unusual punishment. See Loukas v. Michigan

8

Dept. of Corrections, slip. op., 2008 WL 544639 at *2 (W.D. Mich. Feb. 27, 2008).

## III.

The Court next turns to Mr. Collins' claim that his Eighth Amendment rights were violated when he was exposed to second-hand tobacco smoke (or ETS, which stands for environmental tobacco smoke). Mr. Collins alleges that, as the result of a disciplinary infraction, he was removed from Unit C-1, which was strictly non-smoking, to Unit C-2 where, prior to 2006, smoking was only prohibited in the sleeping area. Before 2006, inmates were allowed to smoke in the dayroom area of C-2, and there were no barriers to prevent smoke from entering the sleeping area. (Affidavit of Eddie Mack at ¶6). Following Mr. Collins' transfer to C-2, he suffered two asthma attacks which, although serious in his view, did not require him to be taken to the medical unit at CCI. Mr. Mack witnessed one of these attacks and retrieved Mr. Collins' inhaler from his locker box. (Mack Affidavit at ¶4). After using the inhaler, Mr. Collins began to breathe normally again. (Id.). Mr. Collins also alleges that his exposure to ETS caused him to suffer from sinusitis.

The parties apparently dispute the extent to which Mr. Collins himself smoked cigarettes and the actual year in which he stopped. See Defendants' Reply to Plaintiff's Memorandum Contra Defendants' Motion for Summary Judgment p. 2. They also disagree as to whether Mr. Collins placed his name on the list for housing in Unit D-4, another strictly non-smoking housing unit. Compare Affidavit of Linda Coval at ¶6 c, d, e, and f with Exhibit F-2 to Plaintiff's Memorandum Contra. Neither of these factual disputes, however, are material to the resolution of the parties' cross-motions for summary judgment on this claim.

The Eighth Amendment generally prohibits prison officials

9

from being "deliberately indifferent" to the health or safety of prison inmates and, as a result, causing them to suffer unnecessary or purposeless pain or injury. In <u>Farmer v. Brennan</u>, *supra*, the Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition for deliberate indifference. <u>Id.</u> at 839. It held that "a prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety ...." <u>Id</u>. at 837. Officials must be aware of facts from which they could conclude that a substantial risk exists and must actually draw that conclusion. <u>Id</u>. Prison officials who know of a substantial risk to the health or safety of an inmate are free from liability if "they responded reasonably to the risk, even if the harm ultimately was not averted." <u>Id</u>. at 844.

The mere fact that an inmate, even one with a respiratory condition, is exposed to tobacco smoke in the prison setting is not enough to demonstrate that the inmate's Eighth Amendment right to be free from cruel and unusual punishment has been infringed. As the Court of Appeals explained in <u>Talal v. White</u>, 403 F.3d 423, 426 (6th Cir. 2005):

> The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on a prisoner by acting with 'deliberate indifference' to the prisoner's serious medical needs. <u>Blackmore v. Kalamazoo County</u>, 390 F.3d 890, 895 (6th Cir.2004) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The test for determining deliberate indifference based on exposure to ETS has both objective and subjective components. <u>Helling v. McKinney</u>, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). To satisfy the objective component, a prisoner must show that his medical needs are 'sufficiently serious.' <u>Hunt v. Reynolds</u>, 974 F.2d 734, 735 (6th Cir.1992). The exposure to smoke must cause more than 'mere discomfort or inconvenience.' <u>Id</u>. at 735. Additionally, the prisoner must demonstrate that the risk is one which society deems 'so grave that it

>  violates contemporary standards of decency to expose
>  anyone unwillingly to such a risk.' Helling, 509 U.S.
>  at 36, 113 S.Ct. 2475. To satisfy the subjective
>  component, a prisoner must show that prison authorities
>  knew of, and manifested deliberate indifference to, his
>  serious medical needs. Id. at 32, 113 S.Ct. 2475.

With respect to the objective prong of the Farmer test, there appears to be no question that Mr. Collins suffered from asthma, which is a respiratory condition, and he also claims to have developed sinusitis at one point during his stay at CCI.  He claims that these medical conditions necessitated his residence in a smoke-free environment.  He also claims exposure to tobacco smoke.  However, as the quoted language from Talal v. White indicates, in order to prove an Eighth Amendment violation, there must also be evidence in the case that the exposure to tobacco smoke caused an inmate more than "mere discomfort or inconvenience" and that the risk to the inmate's health was sufficiently grave so that a civilized society would not tolerate exposing inmates to such a risk.  Mr. Collins has simply not met that standard here.

The standard for proving an Eighth Amendment violation through exposure to ETS requires not just allegations, but evidence, that an inmate has been subjected to unreasonably high levels of ETS and that this exposure has caused or is likely to cause a significant adverse impact on the plaintiff's future health. See Williams v. Howes, slip op., 2007 WL 1032365 at *15 (W.D. Mich. Mar. 30, 2007).  Other than his allegation that he was exposed from time to time to second hand smoke because of the lack of a barrier between the dayroom, where smoking was permitted before 2006, and the sleeping area of C-2, Mr. Collins has not alleged that the housing unit contained unreasonably high levels of ETS.  Some exposure to tobacco smoke is a fact of everyday life, and it is not readily apparent that the health or

well-being of a person who suffers from asthma is adversely affected by periodic exposure to ETS.  Without any evidence on this point, there is simply no way the Court can conclude that the objective prong of the Farmer v. Brennan standard has been met.

Perhaps more significantly, however, there is no evidence from which the Court or a jury could conclude that the defendants were deliberately indifferent to Mr. Collins' serious medical needs.  It is uncontroverted that CCI, along with many other prisons in the State of Ohio, gradually began implementing no-smoking policies in the mid-1990s.  By the time the events in this case occurred, CCI had designated a number of housing units as no-smoking units.  The fact that occasional violations of the policy occurred or that smoking restrictions were not always effective due to the lack of barriers does not demonstrate that prison officials acted with deliberate indifference to the health of the inmates housed in those units.  Many cases have held that the "imperfect enforcement of non-smoking policies does not rise to the level of deliberate indifference."  See Williams v. Howes, *supra*, at *14; see also Henderson v. Martin, 73 Fed. Appx. 115 (6th Cir. 2003), cert. denied, 543 U.S. 832 (2004).  Because the Eighth Amendment requires deliberate indifference, the fact that prison officials may have been negligent in implementing a non-smoking policy, or even reckless in their implementation, is not enough to prove liability.  Rather, there would have to be evidence from which the Court or jury could conclude that the specific prison officials named as defendants in this case were aware of and deliberately disregarded a serious risk to Mr. Collins' health by their allegedly haphazard implementation of the non-smoking rules at his housing unit.  There is no such evidence here, and summary judgment is therefore appropriate on this claim.

IV.

Lastly, because the Court has determined as a matter of law that no Eighth Amendment violations have occurred, it is not necessary to consider defendants' arguments that they are entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), because their actions did not violate "clearly established rights of which a reasonable person would have known." See Bukowski v. City of Akron, 326 F.3d 702, 708 (6th Cir. 2003) (Court did not reach "clearly established prong" of qualified immunity where officials did not violate plaintiff's due process rights).  It is similarly unnecessary to address their arguments concerning lack of personal involvement in the decision at issue or concerning the impact of the PLRA's prohibition against awarding compensatory damages where no physical injury has occurred.

V.

Based on the foregoing, it is recommended that Mr. Collins' motion for summary judgment (#67) be denied and that the defendants' motion for summary judgment (#74) be granted.

PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within ten (10) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with

instructions.  28 U.S.C. Section 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge